UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JULIE ANGELONE,
        Plaintiff,                          COMPLAINT
                                                  Civ. No.:

v.

XEROX CORPORATION,
        Defendant.

### JURY TRIAL DEMANDED

Plaintiff demands a jury to try all claims triable by a jury.

### PRELIMINARY INTRODUCTION

1.        This is an action brought pursuant to Title VII of the Civil Rights Act of
1964, 42 U.S.C.§§ 2000 et seq., as amended, and the New York State
Human Rights Law, Executive Law § 290 et seq., alleging that Plaintiff
was intentionally, unlawfully and/or willfully discriminated against
because of her gender, for a continuing hostile environment based on sex,
and for retaliation for engaging in protected activity.

### JURISDICTION AND VENUE

2.        Jurisdiction of this Court is invoked pursuant to 28 U.S.C § 1331 and
1343, 42 U.S.C. § 2000 (e), 29 U.S.C. § 1331, 29 U.S.C. §§ 206 and 216;
the Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367
to adjudicate Plaintiff's claims under state law.

3.        Venue is proper pursuant to 28 U.S.C. §1391.

4.     Plaintiff filed a charge of discrimination with the Equal Employment
       Opportunity Commission ("EEOC") on March 31st, 2008, on September
       23rd, 2008, and finally, on January 13th, 2009.  Less than 90 days have
       elapsed since the Plaintiff's receipt of her Notice of Right to Sue and her
       subsequent filing of the original complaint in this matter.

5.     Plaintiff reserves the right to amend her complaint to add any further
       charges of post-termination  retaliation as a result of filing this lawsuit.

**PARTIES**

6.     Plaintiff is an individual woman who was at all times relevant herein a
       long term employee of the Defendant Xerox, ("defendant") and a resident
       of the County of Monroe, State of New York.

7.     Defendant is a domestic corporation organized under the laws of the State
       of New York.

**FACTS**

8.     Angelone was a long term employee of the defendant, having been
       employed by the defendant since 1986.

9.     For all relevant times herein, Angelone  maintained a stellar work record
       as a "Manager."

10.     On or about June 15th, 2007, Angelone in good faith, and based upon a
        good faith basis to believe she had been subject to unlawful conduct under
        Title VII and the New York Executive Law, made a complaint to
        defendant's department of Human Resources ("HR") that she believed to
        be subject to a hostile environment based on sex.

11.     Specifically, Angelone claimed in good faith that she had observed
        Supervisor Dick Manca ("Supervisor Manca" ) acting in a sexually
        inappropriate manner with several female co-workers in the workplace,
        including leering, touching, fondling, and sex-based language not
        appropriate for the workplace.

12.     Thereafter, Angelone was subject to isolation, ridicule, and retaliation by
        the very co-workers she had reported, including Supervisor Manca.

13.     These same co-workers then violated the confidentiality of the
        investigation into Angelone's claims of a hostile environment by speaking
        openly about Angelone's confidential complaints in the workplace,
        debasing and impugning the reputation of Angelone, a stellar long term
        employee of the defendant whose complaints made in good faith to HR
        were mandated to be held in confidence by defendant's own policies.

Page -3-

14.     The stress of the accusations and attacks by her co-workers and
        supervisors  became so overwhelming that Angelone was taken off of
        work and placed on disability; in fact, Angelone's  HR manager informed
        her  that *"something is going to happen to [her] if [she] [doesn't] go on
        disability," which Angelone took as a threat.*

15.     On July 17th, 2007, Angelone again informed HR that she  felt she  had
        become subject to a hostile environment; in response, HR informed
        Angelone that the results from her first complaint were revealed that
        morning and that she *"would not believe" what her co-workers had "said
        about [her]" and that she would  "never find out what they said."*

16.     Angelone  then informed HR that she was going to see a lawyer; HR
        replied:  " *Julie, just let Xerox go.*"

17.     Angelone  went out  on disability and returned in December of 2007 to
        learn that she would *now be reporting to Dick Manca, the supervisor who
        was the subject of her first complaint to HR.*

18.     After being assigned to Supervisor Manca, Angelone heard him say to
        another female co-worker  *"don't worry, we'll get her out of here."*

19.     Angelone was removed from Senior Staff Meetings and Teams.

20.     Angelone was moved to a "closet-like" office from a window office.

21.     While assigned to Supervisor Manca, he insists on a consistent basis that
        Angelone "walk in front" of him; he informs Angelone that "his wife is
        out of town" and states in conversation with other management employees
        that "when the cat is away, the mouse will play."

22.     Angelone attempted to make yet another complaint to HR about
        Supervisor Manca's conduct, but HR refused to return Angelone's phone
        calls, further dissuading her from making complaints in the workplace.

23.     Since January 2008, Angelone had attempted to apply for positions to
        transfer away from Supervisor Manca, to no avail.

24.     As a reasonable person, Angelone had been dissuaded yet again from
        making complaints in the workplace based on the defendant's refusal to
        take any remedial action.

25.     On March 31, 2008, Angelone filed her initial charge of discrimination charging the defendant with unlawful discriminatory practice relating to employment in violation of Title VII of the Civil Rights Act of 1964 (hostile environment on the basis of sex/retaliation) and the New York State Executive Law, Article 15, Section 296, of the State of New York Human Rights Law, and for retaliation under those statutes as well, as well as for perceived disability under the ADA.

26.     Thereafter, Angelone was subject to further retaliatory harassment.

27.     Senior staff deliberately removed Angelone from the (SP & L) staff meetings for which Angelone had previously attended.

28.     Senior staff deliberately removed Angelone from distribution for (MBB) and (SP & L) communications for which she had previously been a recipient.

29.     Angelone was further denied any meaningful or additional work by Supervisor Menca, and spent most of her time idle.

30.     Further, on June 12ᵗʰ, 2008, *Supervisor Menca reported Angelone to the defendant's Ethics Committee*, compelling senior staff members to approach Angelone in front of peers and subordinates that HR and Security would like to speak to her, further humiliating her in the workplace.

31.     On July 1ˢᵗ, 2008, HR contacts Angelone and asks her "what does she want" with regard to her complaint of discrimination, but fails to take any remedial action whatsoever.

32.     On August 21ˢᵗ, 2008, Angelone is admonished by senior management that *she can no longer make complaints to HR*, but must complain directly to Supervisor Manca, *the very individual she claims is creating a hostile environment*.

33.     Angelone is admonished by senior management that she must report all complaints to Supervisor Manca, *whether she is comfortable with him or not*.

34.     On September 8th, 2008, senior management sent to Angelone a written
        "Complaint Resolution" statement, in which, for some odd reason, it is
        pointed out to Angelone that "the complaint you made in 2007 was
        quickly and thoroughly investigated at that time" further disciplining
        Angelone for sending an email to Supervisor Menca deemed "not
        appropriate."

35.     On September 23rd, 2008, Angelone is compelled yet again to file another
        charge of discrimination with the EEOC setting forth in good faith what
        she believed to be retaliation for having filed her first charge of
        discrimination with the EEOC.

36.     The defendant took no further remedial action with regard to Angelone's
        complaints.

37.     Left with the prospect of being further harassed, humiliated and retaliated
        against, having been admonished that she could make no further
        complaints to defendants HR department, and after giving the defendant a
        myriad of occasions to take remedial action, Angelone was constructively
        discharged from her long term position in retaliation for having engaged in
        protected activity on December 2nd, 2008.

**FIRST CAUSE OF ACTION**
**DISCRIMINATION IN EMPLOYMENT UNDER TITLE VII**

38.     Plaintiff incorporates by reference each and every allegation contained in
        the above stated paragraphs and incorporates the same as though fully set
        forth herein.

39.     Defendant, through its agent(s), engaged in a continuing pattern of
        unremedied sex discrimination by subjecting Plaintiff to unwelcome
        sexual harassment through the creation of a hostile work environment in
        violation of Title VII of the Civil Rights Act of 1964, as amended.

40.     Defendant at all times relevant herein had actual and constructive
        knowledge of the conduct described herein.

41.     The above described unwelcome sexual harassment by defendant's
        agent(s) created an intimidating, oppressive work environment which
        interfered with the Plaintiff's well being.

42.     As a result of the hostile and offensive work environment, perpetrated and
        maintained by defendants, and each of them, and their failure to protect
        the Plaintiff from further harassment, the Plaintiff suffers from severe
        emotional distress.

43.     Defendants violated Title VII of the Civil Rights Act of 1964, as amended,
        by failing to adequately supervise, control, discipline, and/.or otherwise
        penalize the conduct, acts and failures to act of the defendants as described
        above.

44.     Defendant failed to comply with its duty to take all reasonable and
        necessary steps to eliminate sexual harassment from the workplace and to
        prevent it from occurring in the future.

45.     As a direct and proximate result of the defendant's willful, knowing and
        intentional discrimination against her, Plaintiff has suffered and will
        continue to suffer pain and suffering and extreme and severe mental
        anguish and emotional anguish and emotional distress; she has incurred
        and will continue to incur medical expenses for treatment by health care
        professionals, and for other incidental expenses, and she has suffered and
        will continue to suffer a loss of earnings and other employment benefits
        and job opportunities.  Plaintiff is thereby entitled to general and
        compensatory damages in amounts to be proven at trial.

46.     As a further and proximate result of defendant's violations of Title VII of
        the Civil Rights Act of 1964, as amended, Plaintiff has been compelled to
        retain the services of counsel in an effort to enforce the terms and
        conditions of the employment relationship with defendant, and has
        thereby incurred and will continue to incur, legal fees and costs, the full

nature and extent of which are presently unknown to the Plaintiff.

Plaintiff further requests that attorney fees be awarded.

47.     Plaintiff is informed and believes, and based thereon alleges, that the

outrageous conduct of defendant described above was done with fraud,

oppression and malice, with a conscious disregard for her rights, and with

the intent, design, and purpose of injuring her.   Plaintiff is further

informed and believes that defendant authorized, condoned and/or ratified

the unlawful conduct alleged herein, specifically.   By reason thereof,

Plaintiff is entitled to exemplary damages from all defendants in a sum to

be adduced at trial.


### SECOND CAUSE OF ACTION
### SEXUAL HARASSMENT UNDER NEW YORK STATE EXECUTIVE LAW

48.     Plaintiff incorporates  by reference each and every allegation

contained in the above stated paragraphs and  incorporates the same as

though fully set forth herein.

49.     Defendant, through its agent, engaged in a continuing pattern of

unremedied sex discrimination by subjecting Plaintiff to unwelcome

sexual harassment through the creation of a hostile work environment in

violation of The New York State Human Rights Law, ("NYSHRL")

Executive § 290, et seq.    This claim does not raise a novel or complex

issue of law.

50.    Defendant at all times relevant herein had actual and constructive
       knowledge of the conduct described herein.

51.    The above described unwelcome sexual harassment by defendant's agent
       created an intimidating, oppressive work environment which interfered
       with the Plaintiff's well being.

52.    As a result of the hostile and offensive work environment, perpetrated and
       maintained by defendant,  and its failure to protect the Plaintiff from
       further harassment, the Plaintiff suffers from severe emotional distress.

53.    Defendants violated the NYSHRL as amended, by failing to adequately
       supervise, control, discipline, and/or otherwise penalize the conduct, acts
       and failures to act of the defendant as described above.

54.    Defendant failed to comply with their duty to take all reasonable and
       necessary steps to eliminate sexual harassment from the workplace and to
       prevent it from occurring in the future.

55.    As a direct and proximate result of the defendant's willful, knowing and
       intentional discrimination against her, Plaintiff has suffered and will
       continue to suffer pain and suffering and extreme and severe mental
       anguish and emotional anguish and emotional distress; she has incurred
       and will continue to incur medical expenses for treatment by health care

Page -12-

professionals, and for other incidental expenses, and she has suffered and
will continue to suffer a loss of earnings and other employment benefits
and job opportunities. Plaintiff is thereby entitled to general and
compensatory damages in amounts to be proven at trial.

### THIRD CAUSE OF ACTION
### RETALIATION UNDER TITLE VII

56.     Plaintiff incorporate by reference each and every allegation contained in
        the above stated  paragraphs, and incorporates the same as though fully set
        forth herein.

57.     Defendant engaged in a pattern of illegal retaliation in violation of Title
        VII of the Civil Rights Act of 1964. On or about June 15th, 2007, in good
        faith, and based upon a good faith basis to believe she had been subject to
        unlawful conduct under Title VII and the New York Executive Law,
        Angelone made a complaint to defendant's HR department  that she
        believed  to be subject to a hostile environment based on sex.  Specifically,
        Angelone claimed in good faith that she had observed  Supervisor  Manca
        acting in a sexually inappropriate manner with several female co-workers
        in the workplace.   Thereafter, Angelone was subject to isolation, ridicule,
        and retaliation by the co-workers  who she reported, including Supervisor
        Manca,  on that basis, and on the basis that they perceived Angelone to be
        unstable following the death of her young son.  These same co-workers
        then violated the confidentiality of the investigation into Angelone's

Page -13-

claims of a hostile environment by speaking openly about it in the
workplace, debasing and impugning the reputation of Angelone, a stellar
long term employee of the defendant whose complaints made in good faith
to HR were mandated to be held in confidence by defendant's own
policies.  The stress became so overwhelming that Angelone was taken
off of work and placed on disability; in fact, Angelone's HR manager
informed her that "something is going to happen to [her] if [she] [doesn't]
go on disability," which Angelone took as a threat. On July 17th, 2007,
Angelone again informed HR that she felt she had become subject to a
hostile environment; in response, HR informed Angelone that the results
from her first complaint were revealed that morning and that she "*would
not believe" what her co-workers had "said about [her]" and that she
would "never find out what they said.*" Angelone then informed HR that
she was going to see a lawyer; HR replied: "*Julie, just let Xerox go.*"
Angelone went out on disability and returned in December of 2007 to
learn that she would *now be reporting to Dick Manca, the supervisor who
was the subject of her first complaint to HR.* After being assigned to
Supervisor Manca, Angelone heard him say to another female co-worker
"don't worry, we'll get her out of here."  Angelone was removed from
Senior Staff Meetings and Teams.  Angelone was moved to a "closet-like"
office from a window office.  While assigned to Supervisor Manca, he
insists on a consistent basis that Angelone "walk in front" of him; he
informs Angelone that "his wife is out of town" and states in conversation
with other management employees that "when the cat is away, the mouse

Page -14-

will play." Angelone attempted to make yet another complaint to HR about Supervisor Manca's conduct, but HR never returned Angelone's phone calls, further dissuading her from making complaints in the workplace. Since January 2008, Angelone had attempted to apply for positions to transfer away from Supervisor Manca, to no avail. As a reasonable person, Angelone had been dissuaded yet again from making complaints in the workplace based on the defendant's refusal to take any remedial action. On March 31, 2008, Angelone filed her initial charge of discrimination charging the defendant with unlawful discriminatory practice relating to employment in violation of Title VII of the Civil Rights Act of 1964 (hostile environment on the basis of sex/retaliation) and the New York State Executive Law, Article 15, Section 296, of the State of New York Human Rights Law, and for retaliation under those statutes as well, as well as for perceived disability under the ADA. Thereafter, Angelone was subject to further retaliatory harassment. Senior staff removed Angelone from the (SP & L) staff meetings for which Angelone had previously attended. Senior staff removed Angelone from distribution for (MBB) and (SP & L) communications for which she had previously been a recipient. Angelone was further denied any meaningful or additional work by Supervisor Menca. Further, on June 12th, 2008, *Supervisor Menca reported Angelone to the defendant's Ethics Committee*, compelling senior staff members to approach Angelone in front of peers and subordinates that HR and Security would like to speak

Page -15-

to her, further humiliating her in the workplace. On July 1st, 2008, HR

contacts Angelone and asks her "what does she want" with regard to her

complaint of discrimination, but fails to take any remedial action

whatsoever.   On August 21st, 2008, Angelone is admonished by senior

management that *she can no longer make complaints to HR,* but must

complain directly to Supervisor Manca, *the very individual she claims is*

*creating a hostile environment.*   Angelone is admonished by senior

management that she must report all complaints  to Supervisor Manca,

*whether she is comfortable with him or not.*  On September 8th, 2008,

senior management sent to Angelone a written "Complaint Resolution"

statement, in which, for some odd reason, it is pointed out to Angelone

that "the complaint you made in 2007 was quickly and thoroughly

investigated at that time" further disciplining Angelone for sending an

email to Supervisor Menca deemed "not appropriate."  On September 23rd,

2008, Angelone is compelled yet again to file another charge of

discrimination with the EEOC setting forth in good faith what she believed

to be retaliation for having filed her first charge of discrimination with the

EEOC.  The defendant took no further remedial action with regard to

Angelone's complaints.   Left with the prospect of being further harassed,

humiliated and retaliated against, having been admonished that she could

make no further complaints to defendants HR department,  and after

giving the defendant a myriad of occasions to take remedial action,

Page -16-

Angelone was constructively discharged from her long term position in
retaliation for having engaged in protected activity on December 2nd,
2008.

58.     As a direct and proximate result of defendant's willful, knowing and
        intentional discrimination against her, Plaintiff has suffered and will
        continue to suffer severe mental and emotional  anguish, and she has
        suffered and will continue to suffer a loss of earnings and other
        employment benefits and job opportunities.  Plaintiff is thereby entitled to
        general and compensatory damages in amounts to be proven at the time of
        trial.

59.     As a further and proximate result fo the defendant's violations of Title VII,
        Plaintiff has been compelled to retain the services of counsel in an effort to
        enforce the terms and conditions of the employment relationship with
        defendants and each of them, and has thereby incurred and will continue to
        incur, legal fees and costs, the full nature and extent of which are presently
        unknown to the Plaintiff.   Accordingly, Plaintiff requests that attorney
        fees be awarded.

60.     Defendant's conduct as described herein was malicious and oppressive,
        and done with a conscious disregard of Plaintiff's rights.  The acts were

Page -17-

performed with the knowledge of an employers' economic power over its

employees. Defendant ratified the unlawful conduct of its employees in

this action. Consequently, Plaintiff is entitled to exemplary damages from

all defendants.

## FOURTH CAUSE OF ACTION
## RETALIATION UNDER NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW SECTION 290 et seq.

61.     Plaintiff incorporate by reference each and every allegation contained in

the above stated paragraphs and incorporates the same as though fully set

forth herein.

62.     Defendant engaged in a pattern of illegal retaliation in violation of New

York State Human Rights Law, Executive Law Section 290 et seq. On or

about June 15th, 2007, in good faith, and based upon a good faith basis to

believe she had been subject to unlawful conduct under Title VII and the

New York Executive Law, Angelone made a complaint to defendant's HR

department that she believed to be subject to a hostile environment based

on sex. Specifically, Angelone claimed in good faith that she had

observed Supervisor Manca acting in a sexually inappropriate manner

with several female co-workers in the workplace. Thereafter, Angelone

was subject to isolation, ridicule, and retaliation by the co-workers who

she reported, including Supervisor Manca, on that basis, and on the basis

that they perceived Angelone to be unstable following the death of her

young son. These same co-workers then violated the confidentiality of the

Page -18-

investigation into Angelone's claims of a hostile environment by speaking openly about it in the workplace, debasing and impugning the reputation of Angelone, a stellar long term employee of the defendant whose complaints made in good faith to HR were mandated to be held in confidence by defendant's own policies.  The stress became so overwhelming that Angelone was taken off of work and placed on disability; in fact, Angelone's HR manager informed her  that "something is going to happen to [her] if [she] [doesn't] go on disability," which Angelone took as a threat. On July 17th, 2007, Angelone again informed HR that she  felt she  had become subject to a hostile environment; in response, HR informed Angelone that the results from her first complaint were revealed that morning and that she "*would not believe" what her co-workers had "said about [her]" and that she would  "never find out what they said.* " Angelone  then informed HR that she was going to see a lawyer; HR replied:  " *Julie, just let Xerox go.* "  Angelone  went out  on disability and returned in December of 2007 to learn that she would *now be reporting to Dick Manca, the supervisor who was the subject of her first complaint to HR.*  After being assigned to Supervisor Dick Manca, Angelone heard him say to another female co-worker "don't worry, we'll get her out of here."   Angelone was removed from Senior Staff Meetings and Teams.  Angelone was moved to a "closet-like" office from a window office.   While assigned to  Supervisor Manca, he insists on a consistent basis that Angelone "walk in front" of him; he informs Angelone that "his wife is out of town" and states in conversation with other management

employees that "when the cat is away, the mouse will play." Angelone attempted to make yet another complaint to HR about Supervisor Manca's conduct, but HR never returned Angelone's phone calls, further dissuading her from making complaints in the workplace. Since January 2008, Angelone had attempted to apply for positions to transfer away from Supervisor Manca, to no avail. As a reasonable person, Angelone had been dissuaded yet again from making complaints in the workplace based on the defendant's refusal to take any remedial action. On March 31, 2008, Angelone filed her initial charge of discrimination charging the defendant with unlawful discriminatory practice relating to employment in violation of Title VII of the Civil Rights Act of 1964 (hostile environment on the basis of sex/retaliation) and the New York State Executive Law, Article 15, Section 296, of the State of New York Human Rights Law, and for retaliation under those statutes as well, as well as for perceived disability under the ADA. Thereafter, Angelone was subject to further retaliatory harassment. Senior staff removed Angelone from the (SP & L) staff meetings for which Angelone had previously attended. Senior staff removed Angelone from distribution for (MBB) and (SP & L) communications for which she had previously been a recipient. Angelone was further denied any meaningful or additional work by Supervisor Menca. Further, on June 12th, 2008, *Supervisor Menca reported Angelone to the defendant's Ethics Committee*, compelling senior staff members to approach Angelone in front of peers and

Page -20-

subordinates that HR and Security would like to speak to her, further humiliating her in the workplace. On July 1st, 2008, HR contacts Angelone and asks her "what does she want" with regard to her complaint of discrimination, but fails to take any remedial action whatsoever. On August 21st, 2008, Angelone is admonished by senior management that **she can no longer make complaints to HR,** but must complain directly to Supervisor Manca, *the very individual she claims is creating a hostile environment.* Angelone is admonished by senior management that she must report all complaints to Supervisor Manca, *whether she is comfortable with him or not.* On September 8th, 2008, senior management sent to Angelone a written "Complaint Resolution" statement, in which, for some odd reason, it is pointed out to Angelone that "the complaint you made in 2007 was quickly and thoroughly investigated at that time" further disciplining Angelone for sending an email to Supervisor Menca deemed "not appropriate." On September 23rd, 2008, Angelone is compelled yet again to file another charge of discrimination with the EEOC setting forth in good faith what she believed to be retaliation for having filed her first charge of discrimination with the EEOC. The defendant took no further remedial action with regard to Angelone's complaints. Left with the prospect of being further harassed, humiliated and retaliated against, having been admonished that she could make no further complaints to defendants HR department, and after giving the defendant a myriad of

Page -21-

occasions to take remedial action, Angelone  was constructively
discharged from her long term position in retaliation for having engaged in
protected activity  on December 2nd, 2008.

63.        As a direct and proximate result of defendant's willful, knowing and
intentional discrimination against her, Plaintiff has suffered and will
continue to suffer severe mental and emotional  anguish, and she has
suffered and will continue to suffer a loss of earnings and other
employment benefits and job opportunities.  Plaintiff is thereby entitled to
general and compensatory damages in amounts to be proven at the time of
trial.

        **WHEREFORE**,  Plaintiff Julie Angelone prays that judgement be entered in her
favor in accord with the above captioned causes of action.

Dated: January 12, 2009
Rochester, New York

Respectfully Submitted By:

/S/ Christina A. Agola, Esq.
_____
Christina A. Agola, Esq.

Attorneys & Counselors at Law, PLLC
Attorney for Plaintiff
2100 First Federal Plaza
28 East Main Street
Rochester, New York  14614
585.262.3320
caagola@agolalaw.com