**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

JULIE ANGELONE,

        Plaintiff(s),

   v.

XEROX CORPORATION,

        Defendant(s).

**DECISION AND ORDER**
09-CV-6019

### Preliminary Statement

This Title VII employment discrimination action stems from plaintiff's employment with defendant Xerox. See Complaint (Docket # 1). Specifically, plaintiff alleges that she was discriminated against because of her gender, subjected to a continuing hostile work environment because of her sex, and retaliated against for engaging in protected activity. Id. In her Complaint, plaintiff asserts four causes of action, including claims for (i) discrimination in employment under Title VII, (ii) sexual harassment in violation of the New York State Human Rights Law ("NYSHRL"), (iii) retaliation under Title VII, and (iv) retaliation under NYSHRL. Id. at ¶¶ 38-63. Currently pending before the Court is plaintiff's motion to compel (Docket # 38).

### Factual Background

Julie Angelone is a former manager of a Xerox facility in Rochester, New York who began working at Xerox in 1986. In the Spring of 2007, Angelone complained to her manager about sexual

harassment and a hostile work environment.  On June 15, 2007, Angelone made a formal internal company complaint to Xerox's Human Resources Department.  Pursuant to company policy, Xerox commenced an investigation into Angelone's complaint.  On July 17, 2007, plaintiff made a second complaint to defendant's Human Resources Department alleging continuing harassment and hostile work environment and Xerox continued its internal investigation into plaintiff's claims.  Deposition testimony and documents submitted for *in camera* review revealed that the investigation into Angelone's complaints was conducted and reviewed by a team of Xerox employees, including members of Xerox's Office of General Counsel.  The internal investigation culminated with the issuance of a Policy Violation and Investigation Report ("PVIR") dated August 22, 2007.  The PVIR investigation concluded that there were policy violations and recommended certain punitive and remedial actions.

 On March 28, 2008, Angelone filed her first charge with the Equal Employment Opportunity Commission ("EEOC") alleging that Xerox engaged in unlawful discriminatory employment practices on the basis of plaintiff's sex.  On September 23, 2008, Angelone filed a second charge with the EEOC alleging that she was being retaliated against for filing her first charge of discrimination with the EEOC.  On January 13, 2009, plaintiff commenced the instant federal lawsuit. See Complaint (Docket # 1).

  In its Answer to plaintiff's Complaint, defendant asserted a

variety of affirmative defenses, two of which are relevant here. As a Ninth Affirmative Defense, Xerox asserted that it "exercised reasonable care to prevent and to promptly correct any alleged harassment, discriminatory conduct or retaliation in its workplace." See Answer (Docket # 3). As a Tenth Affirmative Defense, Xerox asserted that plaintiff "unreasonably failed to take advantage of the preventive and corrective opportunities provided by Xerox." See id. During discovery, plaintiff requested production of all documents relating to defendant's internal investigation of the allegations supporting plaintiff's complaints of discrimination, harassment and retaliation. In response, defendants produced the PVIR, but also submitted a privilege log which withheld various documents relating to its in-house investigation into plaintiff's allegations on grounds of attorney-client and work-product privileges.

With the instant motion to compel (Docket # 38), plaintiff seeks to compel production of all documents involving or relevant to Xerox's internal investigation of plaintiff's allegations. Plaintiff argues, *inter alia*, that "[b]y asserting the adequacy of the in-house legal department's internal investigation as an affirmative defense, Defendant has waived both attorney-client privilege and work product defenses with respect to that investigation." See Plaintiff's Memorandum of Law annexed to Docket # 40 at p. 5. In response and opposition, defendant argues that (i)

3

"the attorney-client privilege applies because the documents reflect communications rendered for the purpose of obtaining legal advice," (ii) "Xerox has not waived the attorney-client privilege," and (iii) "the remaining documents on the privilege log are immune from disclosure because they are work product."  <u>See</u> Defendant's Memorandum in Opposition (Docket # 43) at pp. 6-16.  On April 20, 2011, the Court held a hearing and heard arguments from the parties. After the hearing, Xerox submitted for *in camera* review both redacted and un-redacted copies of the documents being withheld.

### **Discussion**

<u>Reliance on the Faragher-Ellerth Defense</u>: The ninth and tenth affirmative defenses alleged in Xerox's Answer are carefully and conspicuously couched in language which mirrors the Supreme Court's holdings in <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998) and <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742 (1998).  Pursuant to <u>Faragher</u> and <u>Ellerth</u>, an employer faced with a hostile environment case may, under certain circumstances to avoid vicarious liability, affirmatively allege and prove that "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  <u>Ellerth</u>, 524 U.S. at 765 ; <u>Faragher</u>, 524 U.S. at 807.

By pleading the so-called <u>Faragher-Ellerth</u> defense in its Answer, Xerox has affirmatively and deliberately put its internal investigation of Angelone's workplace complaints at issue in this litigation.

The intersection of the <u>Faragher-Ellerth</u> defense and the attorney-client and work product doctrines has sometimes proven difficult for courts to navigate.  However, the clear majority view is that when a Title VII defendant affirmatively invokes a <u>Faragher-Ellerth</u> defense that is premised, in whole in or part, on the results of an internal investigation, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation.  <u>See</u>, <u>e.g.</u>, <u>Musa-Muaremi v. Florists' Transworld Delivery, Inc.</u>, 270 F.R.D. 312, 317-19 (N.D. Ill. 2010)(By asserting the <u>Faragher-Ellerth</u> defense, the employer "waives any attorney-client privilege that might apply to a defendant's investigation documents or communications."); <u>Reitz v. City of Mt. Juliet</u>, 680 F. Supp. 2d 888, 893-94 (M.D. Tenn. 2010)(employer's reliance on internal investigation of discrimination complaint waived the attorney-client privilege and work product protection for all documents underlying the report); <u>E.E.O.C. v. Outback Steakhouse of Fla., Inc.</u>, 251 F.R.D. 603, 611-12 (D.Colo. 2008)(where defendants pled <u>Faragher-Ellerth</u> affirmative defense, they waived any

applicable attorney-client privilege and work product doctrine regarding investigations into employees' complaints); Jones v. Rabanco, Ltd., No. C03-3195P, 2006 WL 2401270, at *4 (W.D. Wash. Aug. 18, 2006)(assertion of Faragher-Ellerth defense waived any applicable attorney-client privilege and "cause[d] any investigation and remedial efforts into the discrimination alleged in this case, in which Defendants engaged and in which their attorneys were involved, to become discoverable, despite any attorney-client privilege that may have normally attached to such communications"); Walker v. Cnty. of Contra Costa, 227 F.R.D. 529, 535 (N.D. Cal. 2005)(defendants waived any attorney-client privilege and work product protection for investigatory report prepared by attorney by asserting as a defense the adequacy of their pre-litigation investigation of plaintiff's discrimination claims); McGrath v. Nassau Cnty. Health Care Corp., 204 F.R.D. 240, 245-46 (E.D.N.Y. 2001)(defendant's invocation of the Faragher-Ellerth defense waived the work-product privilege); Brownell v. Roadway Package Sys., Inc., 185 F.R.D. 19, 25 (N.D.N.Y. 1999)(defendant waived attorney-client privilege as to attorney's investigatory documents by assertion of adequacy of investigation as affirmative defense).

 Here, Xerox has clearly invoked the Faragher-Ellerth defense by claiming that it used reasonable care to prevent and promptly correct any alleged harassment or discrimination and that plaintiff failed to take advantage of "preventative and corrective

opportunities provided by Xerox." Xerox can not rely on the thoroughness and competency of its investigation and corrective actions and then try and shield discovery of documents underlying the investigation by asserting the attorney-client privilege or work product protections. Hence, any document or communication considered, prepared, reviewed, or relied on by Xerox in creating or issuing the PVIR must be disclosed to plaintiff.

<u>Documents Submitted for *in camera* Review</u>: Dozens of documents were submitted by Xerox for *in camera* review. As to many of them, it is difficult for the Court to determine what role, if any, the document had in Xerox's internal investigation of Angelone's complaints. The first six documents listed on Xerox's privilege log refer or relate to Xerox's internal investigation of Angelone's complaints and were all prepared before the PVIR was issued. Based on the limited waiver inherent upon assertion of a <u>Faragher-Ellerth</u> defense, the Court finds them to be clearly discoverable.[1]

As to the remaining documents submitted by Xerox, they appear to be documents created <u>after</u> the PVIR was issued, and indeed, most

---

[1] The first two documents appear to be handwritten notes summarizing facts discovered during the investigation and only work product protection is claimed on Xerox's privilege log. The next four documents also appear to be notes regarding the PVIR investigation, as well as emails transmitting drafts of the PVIR report. As to these documents, Xerox claims both attorney-client <u>and</u> work product protections on its privilege log, although no legal advice or litigation strategy is apparent from the Court's *in camera* inspection.

of them were prepared after Angelone filed her first discrimination complaint with the EEOC. Assuming Xerox's Faragher-Ellerth defense will not refer to or rely on these post-PVIR documents or the adequacy of any post-PVIR investigation, I find that Xerox has not waived either the attorney-client privilege or the work product protection afforded to the documents. However, Xerox is advised that should any of these post-PVIR documents be referred to or relied on by Xerox at trial in arguing to the Court or the jury that it exercised reasonable care to prevent or correct harassing or discriminatory behavior or that Angelone failed to take advantage of preventive or corrective opportunities provided by Xerox, then Xerox's invocation of work product or attorney-client protections is invalid and the documents must be immediately produced.[2]

## Conclusion

For the reasons set forth above, plaintiff's motion to compel (Docket # 38) is **granted in part and denied in part.**

**SO ORDERED.**

                                                                    _____
                                                                    JONATHAN W. FELDMAN
                                                                    UNITED STATES MAGISTRATE JUDGE

Dated: September 26, 2011
Rochester, New York

---

[2] The Court could imagine, for example, that the events described in the "investigation notes" of July 21, 2008 could conceivably be relevant to Xerox's Faragher-Ellerth affirmative defense.

8